24937. MOORE *v.* BRYAN *et al.*

DECIDED DECEMBER 16, 1935.

*O. C. Hancock*, for plaintiff.

*Bryan, Middlebrooks & Carter, John A. Dunaway, O. E. Bright, Perry Brannen,* and *Smith, Smith & Bloodworth,* for defendants.

SUTTON, J. Moore brought suit against Bryan, Byck, and the Byck Electric Company, to recover damages on account of injuries alleged to have been the result of the joint and concurrent negligence of Bryan and Byck, the negligence of Byck being chargeable to the corporate defendant. The plaintiff made substantially the following allegations in his petition: He was riding as a guest in a Plymouth automobile driven by Bryan and proceeding along the highway at an unlawful rate of speed at the time in question. A Chevrolet automobile belonging to the Byck Electric Company and driven by Byck, the authorized agent of said company, was approaching from the opposite direction, it also was being driven at the time at an unlawful rate of speed. This automobile overtook a "Model T Ford" automobile driven by one Butts, traveling in the same direction, as the Chevrolet; and being unable to stop the Chevrolet, Byck suddenly turned the steering-wheel and swerved his car to the left and directly in front of the automobile in which the plaintiff was riding and which was approaching from the opposite direction, the Plymouth being on the left side of the road so far as the Chevrolet was concerned. Thereupon the Chevrolet and Plymouth cars collided, and the plaintiff was injured. The highway at this point was straight and free from obstruction. Both automobiles were being driven at the time at about 70 miles per hour. In paragraph 10 of the petition the plaintiff alleges that "Bryan was driving his said automobile, as aforesaid, on the right-hand side of the center of the highway, and that at the point of meeting the T. Ford automobile, above referred to, the defendant, Sylvan M. Byck, drove the Chevrolet automobile, as aforesaid, in and on to his left-hand side of the center of the said highway, directly in front of the automobile in which petitioner was riding, as aforesaid, thus causing the two automobiles to collide, almost head-on;" that the defendants are jointly and severally liable to the plaintiff, the collision being the result of the joint and concurrent negligence of Byck as agent of the Byck Electric Company, in the operation of the Chevrolet, while engaged in the business of said company, "and that while so engaged he did drive the said Chevrolet automobile on to the left-hand side of the center of said highway, and directly in front of the car driven by Cabaniss A.

Bryan as herein set forth; that the said Cabaniss A. Bryan, in whose car petitioner was riding as a passenger, was driving the same at a terrific and dangerous rate of speed on said highway, and directly in and on to the automobile of the said Byck Electric Company, driven by the said Sylvan M. Byck as above set forth; that the cause of said injuries, suffering, and damages was a joint and concurrent act caused by said collision, as above set forth."

The negligent acts of each defendant were set forth as follows: "(a) Sylvan M. Byck, as agent of the Byck Electric Company, a corporation, . . drove together the said automobiles, causing a head-on collision which injured and damaged petitioner in the manner above set forth. (b) That the collision and the driving together of said automobiles . . was due to, caused by, and the sole result of the negligence of the said Sylvan M. Byck as agent of the Byck Electric Company, Byck Electric Company, and Cabaniss A. Bryan. (c) That the defendants, Sylvan M. Byck as agent of the Byck Electric Company, and Sylvan M. Byck, were negligent in not driving the said automobile to the right-hand side of the automobile of the said Cabaniss A. Bryan, thus preventing the collision and injury to petitioner; there being space sufficient to pass safely between the T. Model Ford automobile operated by Charlie Butts, and the automobile operated by the defendant Cabaniss A. Bryan, without striking and colliding with same as herein alleged, thereby preventing the collision and injury to petitioner. . . (d) That the said Cabaniss A. Bryan was negligent in not having his said automobile under control and driving same to his extreme right, thus avoiding colliding with the automobile of the Byck Electric Company, operated by Sylvan M. Byck. . . (e) The Byck Electric Company, a corporation, through its agent Sylvan M. Byck, and Sylvan M. Byck were negligent in driving said automobile on said highway at a rate of speed in excess of 40 miles per hour, and in violation of the statute of the State of Georgia, on account of said excessive speed, and in violation of the statute of the State of Georgia the said automobile was beyond the control of the operator, the said Sylvan M. Byck, thus jointly, with the negligence of Cabaniss A. Bryan, caused the collision and injuries as above set forth. (f) The Byck Electric Company, a corporation, through its agent Sylvan M. Byck, and Sylvan M. Byck were negligent in not looking on the left-hand side of said

highway before driving said Chevrolet automobile thereon, and in attempting to pass the said Ford car on the left-hand side of the highway without first looking to see whether or not there were cars approaching in the opposite direction. (g) The defendant Cabaniss A. Bryan was guilty of gross negligence in driving his said Plymouth automobile at an excessive and dangerous rate of speed, in violation of the statutes of the State of Georgia. (h) The said Cabaniss A. Bryan was negligent in not keeping his said automobile under control, so that said automobile could have been stopped in order to have prevented the collision as above referred to. The defendant Cabaniss A. Bryan was guilty of gross negligence in driving his said Plymouth automobile at an excessive and dangerous rate of speed, in violation of the statutes of the State of Georgia; that the said Cabaniss A. Bryan was negligent in not keeping the said Plymouth automobile under control, so as to have enabled him to guide the same safely to the extreme right side of the highway, thereby avoiding the collision and negligent act of the defendant Sylvan M. Byck in trying to pass the T. Model Ford automobile of Charlie Butts. . . (i) The said Cabaniss A. Bryan was guilty of gross negligence in failing to detect the presence of said automobile in time to prevent the collision, thus injuring and damaging petitioner as above set forth. (j) The negligent acts of all the defendants above enumerated was the approximate cause of the collision, which injured and damaged petitioner in the full sum sued for herein." Also, that there was ample room on said highway to pass to the left of the Model T. Ford automobile of Butts and to the left of the center of the highway, and for the meeting and passing of both the Chevrolet and Plymouth automobiles safely; and if the defendants had been in the exercise of ordinary care and diligence and had not been driving said automobiles at a reckless and dangerous rate of speed, they could have passed on said highway.

The plaintiff offered an amendment to his petition, in which he alleged that Bryan was negligent in driving his Plymouth automobile on a dark night at such dangerous and excessive rate of speed, about 70 miles an hour, in violation of the State law, and in not seeing the approaching automobile driven by Byck, which was on the wrong side of the highway, in time to avoid the collision, which he could have done by the exercise of ordinary care and diligence,

the road being straight and without obstructions at this point; that the plaintiff at the time protested to Bryan about his speed, "and remonstrated with him that it was dangerous to approach said automobile at said rate of speed; the defendant, Cabaniss A. Bryan, ignoring petitioner's protest, *driving head-on into the automobile of the said Sylvan M. Byck, causing the collision as herein set forth.* (Italics ours.) . . The defendant, Cabaniss A. Bryan, was guilty of gross negligence in driving his said Plymouth automobile at an excessive and dangerous rate of speed, in violation of the statute of the State of Georgia, over the protest of petitioner." This amendment was tendered on May 2, 1935. The judge took the allowance thereof under advisement, together with general demurrers urged by the defendants. On May 3, 1935, the judge sustained the demurrer of Bryan that no cause of action was set out against him; and this worked a dismissal of the action as to the other defendants, they being non-residents, and Bryan being the only defendant residing within the jurisdiction of the court. At the same time the judge passed an order disallowing the amendment. The plaintiff excepted to the rulings just stated.

It is contended that the amendment was an attempt by the plaintiff to change the theory of his case, in that in the original petition he charged that the collision was caused by Byck driving head-on into the automobile of Bryan, and in the amendment he set up that the collision was caused by Bryan driving head-on into the automobile of Byck (see portion of amendment italicized). It is also contended that the amendment came too late; that is, after the petition had been dismissed on demurrer. Bryan moved to dismiss the bill of exceptions in so far as it assigns error on the disallowance of the amendment, "since it appears that the demurrer to the plaintiff's petition was acted on first, and the demurrer sustained and the plaintiff's case actually dismissed thereafter, while on the same date, but nevertheless at a time when plaintiff's case stood dismissed, without any order allowing the plaintiff the right to amend," and therefore the plaintiff's case had been dismissed on general demurrer, leaving the court without jurisdiction to pass on the amendment. Bryan contends that this court should "dismiss the first portion of the plaintiff's bill of exceptions wherein error is assigned on the order of the court disallowing the amendment, which was tendered after the case had

been dismissed on general demurrer, upon the ground that since the demurrer to plaintiff's case or petition as amended was sustained, and judgment was rendered thereon which did not allow time for an amendment to the petition, the effect of the judgment was to dismiss the petition as a whole, and the judgment disposed of the case entirely, and the Fulton superior court did not longer have any jurisdiction. The failure of the trial judge to allow additional time for amendment resulted in the automatic dismissal of the entire case and the court no longer had any jurisdiction thereof. (*Blyth* v. *White,* 178 *Ga.* 488, 173 S. E. 421). The proposed amendment, furthermore, is no part of the record until it is filed; and it was not filed, as will be seen in the record in this case, nor was there any order allowing it to be filed, and consequently is no part of the record in this case." Bryan contends that the "disallowing of the proposed amendment, which had not been filed, is not a final judgment; the same is not subject to an assignment of error; and it is contrary to law in a direct bill of exceptions, inasmuch as it appears from the record in this case, and the ruling of the trial court on the general demurrer to the plaintiff's petition, it alone became the final judgment in the case."

1. The contention of Bryan, that the amendment was tendered after the case had been dismissed on general demurrer, the order of dismissal not providing for any amendment, that therefore the court had no jurisdiction even to enter an order disallowing such amendment, and that the bill of exceptions should be dismissed in so far as it attempts to assign error on the judgment disallowing the amendment, is without merit. The motion is denied. It appears from the bill of exceptions that this amendment was tendered on May 2, 1935, that the judge took under advisement the allowance thereof at the same time that he took under advisement the question of the demurrers to the petition, and that on May 3, 1935, he passed an order sustaining the demurrer of the resident defendant on the ground that no cause of action was alleged against him, which automatically worked a dismissal of the case as to the other defendants for lack of jurisdiction, at the same time passing his order disallowing the proffered amendment. It therefore appears that the court had jurisdiction of the amendment at the time it was tendered; and as it set up facts germane to the original cause of action and did not seek to set up a new

cause of action, it should have been allowed. The right to amend is very broad, and the courts have adopted a policy of liberality in allowing amendments to petitions. Amendments may be made at any stage of the cause. Code of 1933, § 18-1301. The amendment in this case, even if submitted while the court was considering the general demurrers, did not come too late, having been presented before the court passed its order sustaining the general demurrer of Bryan, which worked a dismissal of the action. See *Walker* v. *Central of Ga. Ry. Co.*, 47 *Ga. App.* 240 (4) (170 S. E. 258); *Holliday* v. *Riordon*, 12 *Ga.* 417; *Beall* v. *Blake*, 16 *Ga.* 119; *Myrick* v. *Myrick*, 67 *Ga.* 771; *Freeman* v. *Brown*, 115 *Ga.* 23 (41 S. E. 385).

The contention of the defendants that the original petition did not set up a cause of action against Bryan, and therefore that there was nothing to amend by, and that the court properly disallowed the proffered amendment for this reason, is not well taken. " 'A petition showing a plaintiff and a defendant, and setting out sufficient to indicate and specify some particular fact or transaction as a cause of action is enough to amend by.' Civil Code (1910), § 5682, codifying the decision in *Ellison* v. *Ga. R. Co.*, 87 *Ga.* 691 (13 S. E. 809), which construed the clause in section 5681 permitting amendments 'in matter of form or of substance, provided there is enough in the pleadings to amend by.' The rules stated in the *Ellison* case are, that, where the amendment of a pleading is one as to form, there must be a 'complete cause of action in substance;' 'but when the amendment needed is one of substance itself, "enough to amend by" does not mean the same as "enough to be good in substance without amendment." On the contrary, failing to be good in substance is generally the reason why amendment of substance is needed.' As to the subject-matter in the original pleading, there must be 'facts enough to indicate and identify some particular cause of action as the one intended to be declared upon, so as to enable the court to determine whether the facts proposed to be introduced by the amendment are part and parcel of the same cause.' 'The declaration must show what the design of the pleader was, and that his design was such that, if filled out and completed, a cause of action might appear. . . If enough is alleged to render it fairly and reasonably probable that the plaintiff claimed to have a cause of action of the kind.

indicated, and that it was his design or that of his pleader to declare upon it, this probability is to be accepted for the purpose of allowing amendment just as though his design were known with full certainty. . . The contents of the amendment as compared with what is already in the declaration may tend to show, either that the plaintiff is endeavoring to follow up a cause of action, or supposed cause, which he had in view when the declaration was prepared and filed, or that, having since discovered that no such cause of action exists or is maintainable, he has concluded to shift his ground and bring in surreptitiously a new and distinct. cause of action in violation of one of the limitations upon his right to amend. . . The plaintiff must go still further than to indicate a subject-matter and some cause of action of a particular kind; his declaration must indicate what particular individual cause of action the design of the suit embraces. . . The pleader is a builder who has a right to go on and finish from any beginning .whatever, provided he can show his original plan by what he has done and what he proposes to do, and provided he will confine himself to that plan, and provided the plan is one which, when fully executed, will result in a real edifice and not a mere castle in the air.' " *Johnson Lumber Co.* v. *Akers Lumber Co.,* 48 *Ga. App.* 329, 330 (172 S. E. 667). The amendment in this case was one of substance; and even if it be held that the petition did not set out a complete cause of action, yet there was certainly enough pleaded therein for it to fall within the rule laid down and explained by Judge Jenkins in the case just cited.

The defendants contend further that the amendment was properly disallowed, because it sought to add a new and distinct cause of action, in violation of the provisions of the Code, § 81-1303. Amendments amplifying the allegations of a petition as to negligence, and even adding grounds of negligence, do not necessarily add a new and distinct cause of action, in violation of this section. See *Venable* v. *Burton,* 118 *Ga.* 156, 158 (45 S. E. 29); *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318); *Jenkins* v. *Lane,* 154 *Ga.* 454 (115 S. E. 126). The amendment was germane to the original cause of action pleaded, and in our opinion it did not seek to add a new and distinct cause of action. See *Walker* v. *Central Ry. Co.,* supra. This question necessitates a consideration of the meaning of the phrase "cause of action."

"Relatively to the law of pleading, a cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage." *Ellison* v. *Ga. R. Co.,* supra. "So long as a plaintiff pleads but one wrong, he does not set up more than one cause of action. . . A single wrong may, however, be composed of numerous elements and shown by various facts. . . Different facts may be alleged, separately or cumulatively, to show the same wrong, and the number and variety of the facts alleged will not make more than one cause of action, so long as but one wrong is shown. A single wrong will not be made plural by alleging that it is made up of a number of constituent parts. . . A number of tests have been suggested for determining whether an amendment adds a new cause of action. One general test is said to be, 'whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.' Another good test is "whether an adjudication upon one would bar a suit under the other." The plaintiff may "add further facts to more fully describe the cause of action,—the wrong,—which he originally alleged. He may allege additional facts to show the existence of his primary right, as long as he does not undertake to set up another and distinct right. And he may allege additional facts to show that the defendant has been guilty of the alleged violation of plaintiff's right. If there is substantial identity of wrong (which necessarily includes identity of the right violated), there is substantial identity of cause of action. . . So long as the facts added by the amendment, however different they may be from those alleged in the original petition, show substantially the same wrong in respect to the same transaction, the amendment is not objectionable as adding a new and distinct cause of action." *City of Columbus* v. *Anglin,* supra. The purpose of this amendment was undoubtedly to amplify and enlarge upon, and to some extent vary, the particulars in respect to which the conduct of the defendants caused the collision and the alleged consequent injuries to the plaintiff. "It is also quite clear that this amendment related to the same occasion, the same occurrence, and the same injuries referred to in the declaration; and consequently it does not introduce a new and distinct cause of action." *Colley* v. *Gate*

*City Coffin Co.,* 92 *Ga.* 664, 668 (18 S. E. 817). Therefore the fact that the original petition alleged that Byck ran his automobile into Bryan's car, and that the amendment offered set out that Bryan ran his car into Byck's, did not render the amendment subject to the objection that it was thus attempted to set up a new and distinct cause of action. This was merely varying to some extent the manner in which the conduct of Byck and Bryan brought about the collision. The plaintiff was still seeking a recovery against the defendants because of their alleged joint negligence in the same transaction, the same wrong.

The law as to amendments being very liberal (*Mendel* v. *Miller,* 134 *Ga.* 610, 68 S. E. 430), it follows that the amendment was germane to the original cause of action (*Patrick* v. *Cobb,* 122 *Ga.* 80, 49 S. E. 806), did not come too late, and did not seek to add a new and distinct cause of action. It should have been allowed. See *Gabbett* v. *Atlanta,* 137 *Ga.* 180 (73 S. E. 372). The petition did not show that the plaintiff was injured by reason of his failure to exercise ordinary care for his own safety; and therefore the principle stated in *Kennemer* v. *W. & A. R.,* 42 *Ga. App.* 266 (3) (155 S. E. 771), is not applicable. In that case an amendment charging wilful and wanton negligence did not cure the fatal defect in the original petition that it was not the defendant's negligence that caused the plaintiff's injury. Of course if the allegations of a petition show that the injury was caused by the plaintiff's negligence or failure to exercise care for his own safety, an amendment adding to or amplifying the grounds of negligence charged against the defendant could not aid the petition. It follows that if the petition, together with this amendment, set up a cause of action against Bryan, the resident defendant, the judge erred in dismissing it on the ground that no cause of action was alleged against that defendant.

2. If the court erred in sustaining the demurrer of Bryan and dismissing the action as to him, which worked a dismissal of the petition as to the non-resident defendants, then the case should be reinstated as to all the defendants. "It is now well settled law in this State that where suit is brought against two defendants, one of whom resides in the county, the court has no jurisdiction of the non-resident defendant, unless the resident defendant · is liable in the action." *Peake* v. *Stovall,* 50 *Ga. App.* 595, 597 (179 S. E. 287) ; *Ross* v. *Battle,* 117 *Ga.* 877, 880 (45 S. E. 252).

3. Considering the petition with the proffered amendment of May 2, 1935, and bearing in mind the principle that questions of negligence, even of gross negligence and slight diligence, are generally for determination by the jury under appropriate instructions from the court, it appears from the petition that on a dark night Bryan was driving at an excessive, dangerous, and unlawful rate of speed, about 65 to 70 miles an hour, and did not have his automobile under control; that by operating his automobile at a less rate of speed he could have avoided the collision with Byck's automobile, the highway at the point of the collision being straight and without obstruction, and that the plaintiff protested to Bryan about his excessive and dangerous speed, and Bryan paid no heed thereto; and it is alleged that had he done so he could have avoided the collision and thus prevented the subsequent injury. The plaintiff charges that there was ample room for both automobiles to pass each other safely, and that had they been proceeding at a reasonable speed they could have done so. In this case there is more alleged as gross negligence than that Bryan violated the speed statute. This case is not like *Peavy* v. *Peavy*, 36 *Ga. App.* 202, 205 (136 S. E. 96), or *Engle* v. *Finch*, 37 *Ga. App.* 389 (140 S. E. 632), in this respect. While simply operating an automobile in violation of the speed laws would not necessarily as a matter of law be gross negligence, still an automobile can be operated in such a manner and at such an excessive and dangerous rate of speed, say 70 miles an hour, as to be out of control of the driver, and, under the circumstances of the particular case, to present a jury question as to whether or not the driver was guilty of gross negligence. See *Epps* v. *Parrish*, 26 *Ga. App.* 399 (106 S. E. 297); *Lee* v. *Lott*, 50 *Ga. App.* 39 (177 S. E. 92); *Frye* v. *Pyron*, 51 *Ga. App.* 613 (181 S. E. 142). In these circumstances, we think it is a question for the jury whether or not Bryan was guilty of gross negligence and whether or not the plaintiff was injured by reason of the joint negligence of the two defendants. It does not matter that the negligence charged against one defendant is simple negligence and that charged against the other defendant is gross negligence. The fact that one defendant owes the plaintiff a higher degree of care than the other defendant does not prevent an action by the plaintiff against both the defendants for their joint negligence, if the plaintiff was injured as a

result of their joint and concurrent acts. The petition as amended set out a cause of action, even though the plaintiff's injury might not have resulted from the alleged gross negligence of Bryan alone. See *Spencer* v. *Peace,* 42 *Ga. App.* 516 (156 S. E. 729); *Jolly* v. *Atlanta,* 37 *Ga. App.* 666 (141 S. E. 223); *McGinnis* v. *Shaw,* 46 *Ga. App.* 248, 250 (167 S. E. 533); *Gooch* v. *Georgia Marble Co.,* 151 *Ga.* 462 (107 S. E. 47).

4. It is contended that the pleadings show that the plaintiff and Bryan were engaged in a joint enterprise for their employer, in that they were returning home in the automobile driven by Bryan after having together transacted business in Southeast Georgia for their mutual employer, Wiley Moore, of Atlanta, and therefore that the plaintiff was riding in the automobile of Bryan, not as his guest, but as a passenger; and consequently, if the plaintiff was injured by reason of the ordinary negligence of this defendant jointly with the negligence of the other defendants, then a recovery was authorized under the pleadings against all of the defendants, regardless of whether or not the petition as amended made a case of gross negligence against Bryan. Although a petition may characterize the acts of negligence as gross or as wilful and wanton, if the duty owing by the defendant to the plaintiff is to exercise ordinary care to avoid injuring him, and if the defendant is liable where by reason of his ordinary and simple negligence the plaintiff is injured, then the petition is good as against a general demurrer on the ground that no cause of action is alleged;—this on the theory that the greater includes the lesser. *Western Union Tel. Co.* v. *Harris,* 6 *Ga. App.* 260 (64 S. E. 1123; *Standard Oil Co.* v. *Parrish,* 40 *Ga. App.* 814 (151 S. E. 541); *Blanchard* v. *Ogletree,* 41 *Ga. App.* 4, 7, 8 (152 S. E. 116). However, under the allegations of the petition as amended, construing them most strongly against the plaintiff, as is proper on general demurrer, this court is of the opinion that the petition shows that the plaintiff was riding in the automobile of Bryan gratuitously as a guest, and did not occupy the status of a passenger in the true sense of that term. In the petition the plaintiff alleged that Bryan was on his way from Sandersville to Atlanta, and that at the time Byck overtook the Ford automobile Bryan was driving a Plymouth automobile in which the plaintiff was riding. In paragraph 15 of the petition the plaintiff al-

leged that Byck drove the Chevrolet automobile directly in front of the automobile driven by Bryan, and that Bryan "in whose car petitioner was riding as a guest," was driving his car at a terrific speed. By amendment the plaintiff struck the allegations in this paragraph, and stated that Bryan, "in whose car petitioner was riding as a passenger," drove his automobile at a terrific speed. In this amendment the plaintiff further stated that he was in the automobile with Bryan, that he had no control over its operation, but that Bryan was the owner and operator at the time of the collision, and that the plaintiff and Bryan were returning from Sandersville to Atlanta. This amendment was allowed without exception.

In the proffered amendment which the court disallowed, the plaintiff alleged that he was riding in the automobile with Bryan. While the plaintiff designates himself as a passenger in Bryan's car, we do not think the petition can well be construed as clearly setting up that he occupied such status. A passenger is "one who travels in some kind of public conveyances by virtue of a contract, express or implied, with the carrier, as the payment of fare, or that which is accepted as equivalent therefor." 2 Hutchinson on Carriers (3d ed.), § 997. There are two main elements in the legal definition of a passenger: first, an undertaking on the part of the person to travel in the conveyance provided by the carrier; and second, an acceptance by the carrier of the person as a passenger. Every one, not an employee of the carrier, riding in such conveyance under a contract express or implied, is ordinarily deemed a passenger. The term "passenger," as used in connection with whether a person riding in an automobile is a passenger or an invited guest, in fixing the degree of diligence required to be exercised to avoid injuring him, seems to mean that one is such a passenger when he is being carried for hire. Wellman v. Mead, 93 Vt. 322 (107 Atl. 396). A leading case on the duty owed by the driver of an automobile to one riding therein as a guest, after an exhaustive review of the law and decisions of this country and England on the subject, ends with this holding: "Justice requires that one who undertakes to perform a duty gratuitously would not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the meas-

ure of duty which is assumed in the two cases. But justice requires, that, to make out liability in case of a gratuitous undertaking, the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing." Massaletti *v*. Fitzroy, 228 Mass. 487 (118 N. E. 168, L. R. A. 1918C, 264, 275). So it would seem that the petition here does nothing more than state a case of the plaintiff riding with Bryan for his own benefit, and not for the benefit of Bryan. It does not show that they were going about the business of their common employer, the employment including the carriage of the plaintiff in the automobile of the coemployee Bryan. It follows that the plaintiff was riding with Bryan gratuitously, and not for pay. This being so, it is essential that the plaintiff allege and prove that Bryan was guilty of gross negligence, and that by reason of such gross negligence and the joint and concurrent acts of negligence of the other defendants the plaintiff received the injuries sued for.

5. It being the opinion of this court that the plaintiff made out a case for submission to the jury on the question of gross negligence, it follows that the court erred in dismissing the petition on general demurrer.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*